UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LOUIS MATTHEW CLEMENTS,

      Plaintiff,

v.                                                          Case No. 2:22-cv-190-MAP

COMMISSIONER OF SOCIAL SECURITY

      Defendant.

_____/

## ORDER

      Plaintiff, proceeding *pro se*, seeks judicial review of the denial of his claim for Supplemental Security Income (SSI).[1]   In his Complaint, Plaintiff argues that the Administrative Law Judge (ALJ) erred in formulating his residual functional capacity because he failed to properly consider that he needs to use the restroom ten or more times per shift; that his impairments will affect his concentration, persistence, and pace; and that his absenteeism will affect his reliability and attendance.[2]   In his reply brief, Plaintiff adds seven more arguments: 1) that the ALJ was biased; 2) that Plaintiff is proceeding *pro se* and should be held to a less stringent standard; 3) that the

_____

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

[2] In his Emergency Motion to Forgo Scheduling Order (Doc. 17), Plaintiff requested that the Court "adopt the arguments contained in the complaint to fulfill the memorandum requested in the scheduling order." This Court granted in part Plaintiff's motion (Doc. 18).  The Order granted Plaintiff's request to "forego an opening brief in favor of proceeding on the arguments advanced in his complaint" and indicated Plaintiff may file a reply brief (*Id.*).

vocational expert (VE) did not rely on up-to-date data when she quoted jobs in the national economy that Plaintiff can perform; 4) that Plaintiff is unable to perform the other work in the national economy; 5) that the ALJ did not articulate specific reasons for excluding Plaintiff's testimony about the frequency of bowel movements and need to use the restroom ten times an hour; 6) that the ALJ ignored Plaintiff's inability to socialize due to PTSD; and 7) that the ALJ improperly reported Plaintiff "works" for his mother when in reality he "volunteers" for his mother.  Additionally, Plaintiff requests a remand to the SSA to consider the records he submitted to this Court pursuant to sentence six of 42 U.S.C. § 405(g).  After considering the parties' memoranda (docs. 1, 23, 26) and the administrative record (doc. 15), I find the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence.

 *I. Background*

 Plaintiff, who was born in 1969, claims disability beginning June 4, 2008, due to compression/herniated discs, irritable bowel disease with diarrhea (IBS-D), post-traumatic stress disorder (PTSD), depression, anxiety, sporadic pericarditis linked to IBS-D episodes (Tr. 68-69, 189).  He was 50 years old on the alleged onset date. Plaintiff earned a Bachelor of Fine Arts degree and worked for eight years waiting tables and teaching tennis in New York City while trying to become an actor (Tr. 46, 302).  In 2008, he was arrested for lewd and lascivious conduct with a thirteen-year-old child and, after his conviction, was terminated from his tennis instructor job (Tr. 357).  Due to the stigma associated with this incident, Plaintiff experiences PTSD.  He has nightmares, is hypervigilant, gets angry with loud noises, has difficulty addressing

others, feels depressed, lacks motivation, and sometimes isolates (Tr. 357). Plaintiff served five years of probation (and was arrested seven times for violating his probation), attended sex offender classes, and is a registered sex offender (Tr. 358).

Although he used to write screen plays, Plaintiff states pain and numbness in his arms, due to his cervical and lumbar spine impairments, prevent him from sitting and typing for more than fifteen minutes (Tr. 56-57). Plaintiff suffers from irritable bowel syndrome and plans his day to be around bathrooms (Tr. 57). At the administrative hearing, he described volunteering for several hours a day for his mother's interior design business (Tr. 45).

Given his alleged disability, Plaintiff filed an application for SSI (Tr. 189-195). The Social Security Administration (SSA) denied Plaintiff's claim initially and upon reconsideration (Tr. 68-79, 81-92). Plaintiff then requested an administrative hearing (Tr. 143-146). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 37-67). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-26).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since June 19, 2019, the application date (Tr. 16). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc of cervical spine; degenerative disc of the lumbar spine; degenerative disc of the thoracic spine; irritable bowel syndrome (IBS); anxiety; and posttraumatic stress disorder

(PTSD) (Tr. 16).  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17).  The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to less than a full range of light work with the following restrictions:

> … lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, and crouching; no crawling; frequent overhead reaching; frequent handling and fingering; no exposure to hazardous machinery or unprotected heights; permitted one additional bathroom break not to exceed five minutes both before and after the meal break in addition to regular scheduled breaks; low stress work defined as only occasional decision-making and only occasional changes in the work setting; frequent interaction with coworkers and supervisors; and occasional interaction with the public.

(Tr. 20).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21).

The ALJ concluded that transferability of job skills was not an issue because Plaintiff does not have past relevant work (Tr. 24).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a Checker I (DOT 222.687-010); a Marker

(DOT 209.587-034); or a Router (DOT 222.587-038) (Tr. 25).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 25).  Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 2-8). Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

II.     *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity;  whether the claimant has a severe impairment, *i.e.*, one that

significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178

(citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

   III.   *Discussion*

   As stated above, Plaintiff argues in his Complaint that the Administrative Law Judge (ALJ) erred in formulating his residual functional capacity.  Plaintiff adds more arguments in his reply brief: 1) that the ALJ was biased; 2) that because he is proceeding *pro se*, he should be held to a less stringent standard; 3) that the vocational expert (VE) did not rely on up-to-date data when she identified jobs Plaintiff can perform in the national economy; 4) that he is unable to perform other work in the national economy; 5) that the ALJ failed to articulate specific reasons for excluding Plaintiff's testimony about the frequency of bowel movements and need to use the restroom ten times an hour; 6) that the ALJ ignored Plaintiff's inability to socialize due to PTSD; and 7) that the ALJ improperly reported Plaintiff "works" for his mother when in reality he "volunteers" for his mother.  He also requests a sentence six remand in light of new evidence he filed with this Court (Doc. 26 at 3-8).  Although Plaintiff was represented by counsel at his administrative hearing and during his appeal to the

Appeals Council, he is proceeding *pro se* before in his appeal to this Court.  *See* Doc. 1-3, Counsel's withdrawal letter.  Courts hold *pro se* pleadings to a less stringent standard; therefore, the undersigned construes Plaintiff's complaint and letter brief liberally. *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

   *A. RFC*

   Construing Plaintiff's Complaint liberally, as this Court is required to do, Plaintiff asserts that the RFC is flawed because the ALJ failed to account for his need to use the restroom ten or more times per shift; his deficits in concentration, persistence, and pace; and his absenteeism/reliability.  In response, the Commissioner states that the ALJ properly considered the medical and other record evidence in formulating the RFC and that substantial evidence supports the ALJ's decision.   I agree.

   A claimant may establish "disability through his own testimony of pain or other subjective symptoms."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  A claimant seeking to establish disability through his own testimony must show: (1) evidence of an underlying condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  Social Security Ruling 16-3p cautions that an ALJ's "subjective symptom evaluation is not an examination of an

individual's character." *Id.* When making a symptom evaluation determination, the ALJ considers all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. 20 C.F.R. § 416.929. When the ALJ decides not to credit a claimant's testimony as to his pain, he must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

A claimant's RFC is the most work he can do despite any limitations caused by her impairments. 20 C.F.R. § 416.945(a)(1). RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence. *See* 20 C.F.R. § 416.946(c); *Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor"). To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)(1).

The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.929(c)(2). "Other evidence" includes information that your medical sources and

nonmedical sources provide about your pain or other symptoms, symptom-related functional limitations and restrictions that your medical sources and non-medical sources report, information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees. *See* 20 C.F.R. § 416.929(c)(3). Additionally, the ALJ considers such factors as daily activities; the location, duration, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medications taken; treatment, other than medication, you receive or have received for relief of your pain or other symptoms; any measures you use or have used to relieve your pain and symptoms. *See* 20 C.F.R. § 416.929(c)(3)(i)-(iii). In the end, subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

### 1. productivity

First, Plaintiff complains that the ALJ did not recognize his need to be in the bathroom ten or more times per shift. He posits that his bathroom breaks will affect his productivity by at least fifty percent (Doc. 1 at 5). As set forth above, the regulations outline the ALJ's task of considering Plaintiff's subjective complaints along with *all* of the other evidence to determine whether the complaints are consistent with the other evidence. *See* 20 C.F.R. § 416.929. Here, in crafting the RFC, the ALJ properly considered Plaintiff's subjective complaints in light of the imaging and testing, findings on examinations, and activities of daily living (Tr. 20-23). The ALJ

discussed Plaintiff's IBS-D and the fact that there are minimal treatment records after the filing date (Tr. 22).  The scant medical evidence includes a March 2020 consultative exam by Michael Rosenberg, M.D. wherein Plaintiff reported that his IBS symptoms had improved due to changes to his diet and now he only has diarrhea two to three times a day (Tr. 364).  Thereafter, in November 2020, Plaintiff reported to Dr. Sebastian Draulans (his primary care provider) that his frequent loose stools throughout the day prevented him from meaningful employment (Tr. 481).  In the RFC, the ALJ accounted for Plaintiff's need to visit the bathroom more often than is typical for a normal workday (Tr. 20-24).  More specifically, the ALJ explained that the IBS would cause Plaintiff to need one additional bathroom break after lunch, in addition to the regular 15-minute breaks in the morning and afternoon and the 30-minute lunch break (Tr. 20).

In support of his assertion that he needs more time to use the bathroom, Plaintiff relies only upon his own testimony and self-reports. As the Commissioner notes, if Plaintiff's complaints are not consistent with other evidence, the ALJ need not account for them in the RFC. Again, this Court's scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted). My review demonstrates that the ALJ properly based his RFC determination on the

medical and other evidence, and substantial evidence supports it.[3]  I also find that the ALJ applied the correct legal standards.   I note again that in reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision.  *Mitchell*, 771 F.3d at 782.

### 2.  *concentration, persistence, and/or pace*

Plaintiff next asserts that the ALJ erred by failing to account for his inability to focus.  He states that "[p]eople with disabilities frequently experience trouble with concentration, persistence, and/or pace because of mental symptoms, such as pain and fatigue, related to their medical condition" (Doc. 1 at 5).  Plaintiff suggests that "[i]f abdominal pain and cramps interfere[ ] with your ability to focus and work at an acceptable pace, Social Security should take this into account." (Doc. 1 at 6).  Without citation to medical or other evidence, he states he has a decreased ability to maintain concentration, persistence, and pace due to his IBS-D and PTSD; has a decreased ability to understand and remember instructions and carry out duties throughout the day due to his PTSD and IBS-D; has an inability to get along with others in the workplace and the general public due to his PTSD; has a decreased ability to cope with changes in the work setting due to PTSD; and has an inability to respond appropriately

---

[3] Plaintiff takes issue with the ALJ's suggestion that he wear adult diapers, stating it is untenable since the need to change the diaper would be foremost on his mind and ignores the abdominal cramps and pain that come along with the onset of his need to use the bathroom (Doc. 1 at 5).  While the ALJ's suggestion may have been insensitive, it did not affect the limitations he ultimately included in his RFC.

to supervisors, co-workers, and usual work situations due to PTSD and IBS-D (Doc. 1 at 6).

Here, the ALJ relied on boilerplate language in assessing Plaintiff's subjective symptoms:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 21).  This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence.  *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted at* 2013 WL 1694841 (M.D. Fla. Apr. 18, 2013).   In this case, I find that it is.  In evaluating Plaintiff's subjective complaints, the ALJ summarized Plaintiff's testimony and subjective complaints and compared them to his "minimal treatment records," including the objective imaging and testing, as well as exam findings (Tr. 22-23).  The ALJ noted Plaintiff's "debilitating allegations" and pointed out the incongruency between his subjective complaints and the "generally normal mental status examinations, minimal treatment history, and activities of daily living volunteering at his mother's office, shopping, driving, and writing screen plays" (Tr. 22-23).

Specifically, the ALJ stated:

> Mentally, the claimant is capable of performing low stress work including only occasional decision-making and only occasional changes in work setting,

frequent interaction with coworkers and supervisors, and occasional interaction with the public. The claimant's debilitating allegations of difficulty concentrating, focusing, and interacting are inconsistent with the generally normal mental status examinations, minimal treatment history, and activities of daily living including volunteering at this mother's office, shopping, driving, and writing screen plays.

(Tr. 22).  The ALJ discussed that Plaintiff's allegations of PTSD and anxiety were inconsistent with the record.  When psychologist Paula Bowman evaluated him in March 2020, she observed that Plaintiff was cooperative during her examination, denied current history of psychiatric treatment, demonstrated a fair manner of relating and social skills, was appropriately dressed and groomed, and had adequate expressive and receptive language skills (Tr. 22).  Bowman opined that Plaintiff's thought process was coherent, his affect was flat, and he was mildly impaired in attention and concentration, mildly impaired with recent remote memory, had average intellectual functioning, and fair insight and judgment (Tr. 22).  As the ALJ noted, Bowman found Plaintiff with mild deficits except for mild to moderate difficulty regulating emotions, controlling behavior, or maintaining well-being (Tr. 360).  She diagnosed PTSD and recommended psychological and psychiatric care (Tr. 360).  The ALJ properly evaluated Bowman's opinion pursuant to the revised regulation (Tr. 22).  20 C.F.R. § 416.920c.  The ALJ stated that the state agency psychological consultants' finding that Plaintiff had no severe mental impairments was "not persuasive" and concluded Plaintiff is "more limited than assessed as evidenced by Dr. Bowman's consultative evaluation" (Tr. 23).  The ALJ found Bowman's opinion that Plaintiff "has mild to moderate difficulty regulating emotions, controlling behavior, and maintaining well-

being persuasive" as it was "well-supported by her thorough evaluation and the claimant's activities of daily living" (Tr. 23).

In reaching his RFC determination, the ALJ noted that in November 2020 (six months after Bowman's evaluation), Plaintiff continued to report anxiety symptoms with medication management, but with no psychiatric findings (Tr. 22). Given the medical records and Plaintiff's subjective reports, the ALJ opined Plaintiff is capable of performing "low stress work including only occasional decision-making and only occasional changes in the work setting, frequent interactions with coworkers and supervisors, and occasional interaction with the public" (Tr. 23). The ALJ stated that such accommodations "account[ ] for the claimant's mental health allegations of difficulty concentrating, focusing, and interacting" (Tr. 23).

Against this backdrop, Plaintiff has not shown that the ALJ ran afoul of the Eleventh Circuit's pain standard. *See Holt*, 921 F.2d at 1221. The ALJ articulated specific and adequate reasons for discrediting Plaintiff's subjective complaints. *Foote*, 67 F.3d at 1561-62. To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err in considering Plaintiff's subjective complaints and in determining the extent to which symptoms affect his capacity to perform work activities. The ALJ's RFC adequately addresses Plaintiff's mild limitation in concentration, persistence and

pace.  *See* 20 C.F.R. § 416.929(c).  I find the ALJ's RFC is supported by substantial evidence.

### 3.  reliability and absences

Next, Plaintiff complains that when determining his RFC, the ALJ and the VE did not consider that he would have poor reliability and work attendance.  Plaintiff states that on exceptionally bad days he becomes dehydrated due to severe diarrhea, and it takes one to three days to recover, affecting his reliability and causing absences from work (Doc. 1 at 6).  Again, Plaintiff relies on his own testimony and self-reports, and there is no medical evidence documenting that his impairments will cause him to be absent from work.  However, as set forth above, it is the ALJ's duty to determine a claimant's RFC based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 416.945(a)(1).  When the RFC is supported by substantial evidence, as it is here, the court may not reweigh the evidence or substitute its own judgment, even if it finds that the evidence preponderates against the Commissioner's decision.  *Mitchell*, 771 F.3d at 782.

### B.  bias

In his reply brief, Plaintiff states that this Court needs to "listen" to the hearing to understand the ALJ's "tone and aggressive, demeaning manner" (Doc. 26 at 1).  Plaintiff contends the ALJ's "mind was made up before the hearing" and that "he did not weigh the preponderance of the evidence before him" (Doc. 26 at 1-2).  Plaintiff further states that "[w]hen the ALJ decides not to credit a claimant's testimony as to

his/her pain, he must articulate explicit and adequate reasons for doing so" (Doc. 26 at 2).  Plaintiff maintains the ALJ did not do so here.

A claimant is entitled to an impartial ALJ.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the ALJ's suggestion that Plaintiff wear adult diapers may have been insensitive, it did not affect the limitations he ultimately included in his RFC.  *See* supra n.3.  Nor do I find that the ALJ was biased against Plaintiff, who was represented by counsel at that time, such that he was not afforded a full and fair hearing.  I find that the ALJ properly considered Plaintiff's subjective complaints and followed the applicable regulations in reaching his disability determination.  As the Commissioner indicates, the ALJ need not include in the RFC complaints that he finds inconsistent with all the evidence. And, although Plaintiff may suggest that by re-weighing the evidence this Court could reach a different disability determination, that is not the Court's role.  *See Mitchell*, 771 F.3d at 782.  Rather, as explained above, the Court is tasked with determining whether the ALJ's decision is supported by substantial evidence.  I find that it is.

### C.  Plaintiff's pro se status

Plaintiff states that the Commissioner has "not acknowledged Plaintiff's *pro se* status and has nit-picked his legal abilities and understanding of this process, even asserting that Plaintiff has somehow waived certain arguments" (Doc. 26 at 2).  While Plaintiff has not identified the "nit-picking," in the response brief, the Commissioner states that she "focuses … on the specific issues more fully addressed by Plaintiff" and did not address "other errors" Plaintiff … did not elaborate on" (Doc 23 at n.2 (citation

omitted)). The Commissioner is correct in asserting that the Court need not address issues raised in a perfunctory manner without supporting argument and citation to authorities, as such arguments are generally deemed waived. *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998). However, given that Plaintiff is proceeding *pro se*, this Court is addressing *all* of the arguments Plaintiff raised in the Complaint and in the reply brief, even those not properly developed or supported.

  *D. vocational expert testimony*

  Plaintiff next asserts: "Defendant did not address the fact that the VE was not using the most up-to-date data when she quoted jobs in the 'national economy' during the hearing. She (VE) admitted this to Plaintiff then attorney at the hearing." *See* Doc. 26 at 2. At step five, the burden of proof temporarily shifts to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform despite his impairments." *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citation omitted); 20 C.F.R. § 416.960(c). To carry this burden the Commissioner "may use the services of a vocational expert or other resources such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor" 20 C.F.R. §§ 416.960(b)(2), 416.960(c); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) ("A [VE] is an expert on the kinds of jobs an individual can perform based on his ... capacity and impairments.").

  Looking at the hearing transcript, the VE testified that "[t]he source of the job numbers includes the Bureau of Labor Statistics, Occupational Employment Survey,

the NAICS, and the American Community Survey, as well as the Current Population Survey, and the filter methodology was used to estimate the approximate number of jobs by the DOT number" (Tr. 65). And, as the ALJ noted in his decision, Plaintiff's counsel was given the opportunity to elicit testimony from the VE but has not submitted any evidence demonstrating that the DOT job descriptions are unreliable or that the job numbers in the national economy are inaccurate (Tr. 14). In the decision, the ALJ discussed Plaintiff's objection to the VE's testimony as "unreliable and not relevant," noting that "the Social Security Administration has taken administrative notice of the reliability of the Dictionary of Occupational Titles" (Tr. 14). Additionally, the ALJ noted that he "has not merely relied upon the job descriptions provided in the Dictionary of Occupational Titles, but has instead relied on the vocational expert's testimony" (Tr. 14). At the hearing, the VE testified that her opinions were based on her education and experience, and indicated she has experience in placing people in jobs as a vocational rehabilitation counselor (Tr. 25). Per the Eleventh Circuit caselaw and the applicable regulations, the ALJ properly relied upon the VE's expert testimony. *See* 20 C.F.R. §§ 416.960(b)(2), 416.960(c); *Phillips v. Barnhart*, 357 F.3d at 1240.

To the extent that Plaintiff argues that the ALJ was required to independently verify a VE's testimony, the Eleventh Circuit has held that an ALJ is only required to do so when there is a conflict between the VE's testimony and the DOT. *See Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (citing *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018)). "Unlike the situation in

which the VE's testimony conflicts with the DOT, this Court has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the OES." *Webster*, 773 F. App'x. at 556.  Thus, "[a]n ALJ may, in turn, base his step-five determination solely on the VE's testimony." *Id*. at 555.  I find the ALJ did not err in relying on the VE's testimony at step five and that substantial evidence supports the step five determination.

E.  *work in the national economy*

Relatedly, Plaintiff contends that the Commissioner has not addressed how Plaintiff could be hired or work in a hypothetical job in the national economy in which he has no experience, no background, and no training (Doc. 26 at 2).  Plaintiff (citing to *Foote's* requirement that the ALJ articulate explicit and adequate reasons for deciding not to credit claimant's testimony) asks, "Does the SSA provide placement in these jobs that are floating in the hypothetical cloud of the national economy?" (Doc. 26 at 2 (citing *Foote v. Chater*, 67 F3d at 1561-62)).  As stated above, "a [VE] is an expert on the kinds of jobs an individual can perform based on his … capacity and impairments."   *Phillips*, 357 F.3d at 1240.  Moreover, the regulations provide that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."   20 C.F.R. § 416.966(b).  Pursuant to the regulations, a claimant will be considered "not disabled" if his RFC and vocational abilities make it possible for him to do work that exists in the national

economy but the claimant remains unemployed because of 1) inability to get work; 2) lack of work in local area; 3) hiring practices of employers; 4) technological changes in the industry in which claimant has worked; 5) cyclical economic conditions; 6) no job openings for claimant; 7) claimant would not actually be hired to do work he could otherwise do; or 8) claimant does not wish to do a particular type of work. 20 C.F.R. § 416.966(c)(1)-(8). Against this backdrop, I find that the ALJ properly relied on the jobs identified by the VE, and the ALJ's step five finding is supported by substantial evidence. *See, e.g., Bryant v. Comm'r of Soc. Sec.,* 451 F. App'x 838, 840 (11th Cir. 2012) (finding ALJ properly relied on the VE's testimony that claimant could perform other work).

### F.   frequency of bowel movements

Plaintiff asserts that "[t]he Defendant did not address how the ALJ, VE, or SSA doctors can evaluate the frequency of bowel movements by Plaintiff without following him around for a day or week" (Doc. 26 at 3). Plaintiff asks, "What evidence by any doctor can outweigh Plaintiff's own word of mouth from experience of living day to day with IBS-D?" *See* Doc. 26 at 3 (citing *Foote v. Chater*, 67 F.3d at 1561-62).

In the decision, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms, including his IBS-D symptoms, not entirely consistent with the record evidence and gave reasons to support that finding (Tr. 21). In crafting the RFC, the ALJ included those limitations he found supported by record evidence, including an additional bathroom break (Tr. 20). *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (ALJ not required to include

limitations or impairments unsupported by substantial evidence in the hypothetical posed to the VE).  Thus, I find the ALJ did not err in this regard.

*G.  inability to socialize*

Citing again to *Foote* for the proposition that the ALJ must articulate explicit and adequate reasons for failing to credit a claimant's testimony, Plaintiff asserts that the ALJ erred by failing to address his inability to socialize in a work environment due to PTSD, anxiety, and depression (Doc. 26 at 3 (citing *Foote v. Chater*, 67 F3d at 1561-62)).  Looking at the decision, I find that the ALJ adequately addressed Plaintiff's mental health impairments and included those limitations supported by substantial evidence in the RFC.  *See* 20 C.F.R. § 416.946(c) (RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence).  In determining Plaintiff's RFC, the ALJ discussed Plaintiff's very limited treatment and the consultative psychological evaluation (Tr. 22-23) as well as Plaintiff's subjective complaints and activities of daily living (Tr. 23). The ALJ's RFC adequately addressed Plaintiff's social limitations by restricting him to "low stress work defined as only occasional decision-making and only occasional changes in the work setting' frequent interactions with coworkers and supervisors; and occasional interactions with the public" (Tr. 20).  I find the ALJ did not err in this regard.

*H.  "volunteering" for his mother*

Plaintiff also states the ALJ improperly reported that he "works" for his mother's business when in reality he "volunteers" there.  He states he is "just being present for moral support, not work." (Doc. 26 at 3).  In the decision, the ALJ found

that "[t]he claimant has not engaged in substantial gainful activity since June 19, 2019" (Tr. 16). In reaching this finding, the ALJ indicated "claimant admitted that he volunteers at his mother's office from 2 to 5 pm." and opined that "[w]hile the claimant reported no earnings during the relevant time period, the undersigned finds this volunteer activity more consistent with the findings of the claimant's ability to perform work activity at later steps in the sequential evaluation from the claimant's debilitating allegations." (Tr. 16). Throughout the five-step process, the ALJ discussed that Plaintiff volunteers at his mother's office (Tr, 16, 17, 18, 19, 21, 22, 23, 24). I find that the ALJ did not err in considering that Plaintiff "volunteers" for his mother's business in his disability determination.

I. *new evidence*

The bulk of Plaintiff's reply brief pertains to Plaintiff's request for a sentence six remand due to "new diagnostic evidence not available during the earlier stages" (Doc. 26 at 4-8). Plaintiff attaches the following new medical records to his reply: 1) a report dated April 7, 2022, from Gulf Coast Endoscopy Center pertaining to an upper GI endoscopy that revealed a 1 cm hiatal hernia; 2) a report dated April 7, 2022, from Gulf Coast Endoscopy Center pertaining to a colonoscopy that revealed multiple medium-mouthed diverticula and a 6mm polyp in the cecum that was removed during the procedure; 3) a progress note dated December 17, 2021, concerning new onset groin pain that was diagnosed as an inguinal hernia and doctor advised Plaintiff to "return if symptoms worsen or fail to improve;" 4) a thyroid sonogram report dated December 9, 2021, revealing bilateral thyroid nodules that states "recommend

continued surveillance of the nodules, one on the left is bordering on biopsy size, repeat in six to twelve months;" and 5) records from his March 2015 hospital admission for chest pain.

Under sentence six of 42 U.S.C. § 405(g), "[t]he court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. ..." "A sentence six remand is available when evidence not presented to the Commissioner at any stage of the administrative process requires further review." *Ingram*, 496 F.3d at 1267.  If a claimant makes a sufficient showing to remand a case under sentence six, additional medical evidence can be considered on remand.  *Id.* at 1268.  To satisfy the standard for a sentence six remand, the claimant must show:  1) there is new, noncumulative evidence; 2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for the failure to submit the evidence at the administrative level."  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (quotation omitted).

Looking at the new evidence Plaintiff submitted, all except for the last item are dated *after* the ALJ's decision.  Clearly, those records – dated April 7, 2022, December 17, 2021, and December 9, 2021– did not exist and could not have been submitted to the Commissioner prior to the ALJ's decision.  Thus, as to those records, there is good cause.  However, the records related to Plaintiff's March 2015 hospitalization existed

prior to the decision and could have been submitted.  In fact, records from this hospital admission are included in Exhibit 6F (Tr. 387-397).  Thus, the Court finds no good cause as to those records.

For Plaintiff to prevail, he must also show that the records dated after the ALJ's decision are new, non-cumulative, and material.  *See Enix v. Comm'r of Soc. Sec*, 461 F.App'x 861, 863 (11th Cir. 2012).   Evidence is material if it is relevant and probative such that there is a reasonable possibility that it would change the administrative result.  *Id.* (citing *Caulder*, 791 F.2d at 877).  Plaintiff speculates that all three of the conditions (hiatal hernia, diverticulitis, inguinal hernia, and thyroid nodules) likely existed during the relevant time period.  Plaintiff states that the hiatal hernia, although diagnosed on April 7, 2022, "did not pop up overnight" and likely existed during the relevant time period.   He states that "hiatal hernias cause great amounts of anxiety" and "can" exacerbate his pericarditis and cause a flare-up (because of the stomach's close proximity to the heart) (Doc. 26 at 5).   Similarly, Plaintiff speculates that his diverticulosis likely existed during the relevant time period and "did not pop up overnight."  He asserts that its symptoms mimic and exacerbate IBS-D (Doc. 26 at 6). Plaintiff states the lump diagnosed as an inguinal hernia on December 17, 2021, "had been around for 5 years before Plaintiff was able to get it examined (no money) after fearing something more serious." *Id.*  The medical record pertaining to the hiatal hernia does no support Plaintiff's allegation.  It states: "Symptoms:  Groin lump. State of symptoms date: Last night. … Assessment:  Groin lump (Primary) New onset. No pain. …  Return if symptoms worsen or fail to improve" (Doc 26 at 12-13).  Plaintiff

says he has been advised to lift no more than 5-10 pounds until corrective surgery is performed, however the medical record submitted does not include any limitations (Doc. 26 at 6, 12-13).  Finally, as to the diagnosis of thyroid nodules on December 9, 2021, Plaintiff posits that it is "highly probable" that it has "existed for some time" as they do not "pop up overnight" (Doc 26 at 6).

While these diagnoses are new and non-cumulative, Plaintiff has not shown that the new evidence would change the administrative result.  Plaintiff offers no more than conjecture that these diagnoses existed during the relevant time period and explain his symptoms and/or exacerbate his impairments.  These diagnoses do not alter the medical evidence the ALJ relied on in considering Plaintiff's RFC.  Thus, I find there is not a reasonable possibility that the new evidence submitted to the Court would change the administrative result.  Remand pursuant to sentence six is not warranted.  *Otto v. Comm'r of Soc. Sec.*, 171 F. App'x 782, 785 (11th Cir. 2006) (finding new pulmonary function test and echocardiogram performed after ALJ's decision not material where test results did not discuss claimant's condition during relevant time period).

Within his sentence six remand argument, Plaintiff questions why the ALJ did not address his pericarditis flare ups.  Plaintiff states he "told the Doctor provided by the SSA for physical examination that if he has a bad week of diarrhea from IBS-D his pericarditis flares up" and indicates these flare ups "stop him in his tracks all day" (Doc. 26 at 7).  In his decision, the ALJ discussed Plaintiff's 2015 hospital admission for chest pain, stating "the claimant's cardiac pain was unclear and possibly related to

viral symptoms or pleural pericarditis" (Tr. 21).  The ALJ also discussed the exam by the consultative physician, Michael Rosenberg, M.D., the internal medicine "SSA Doctor" who examined Plaintiff on March 3, 2020 (Tr. 21, 364-65).  Dr. Rosenberg's report references Plaintiff's hospital admission for pericarditis and his IBS characterized by diarrhea (Tr. 364).  I find the ALJ properly considered Plaintiff's pericarditis.  Again, this court may not reweigh the evidence or substitute its own judgment, even if it finds that the evidence preponderates against the Commissioner's decision.  *Mitchell*, 771 F.3d at 782.

IV.   *Conclusion*

Accordingly, after consideration, it is hereby

ORDERED:

1.   The decision of the Commissioner is affirmed.

2.   The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 1st day of March, 2023.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE